Downs and Husband *v.* ALLEN and another, Surviving Partners, etc.

SAME *v.* ALLEN.

ALLEN *v.* Downs and another.

(*Circuit Court, D. Connecticut.* January 5, 1885.)

1. JUDGMENT OF ANOTHER STATE—ACTION ON—DEFENSE.

Judgments of a court of one state can, in an action thereon in another state, be inquired into only in respect to the jurisdiction over the person or subject-matter embraced in the judgment, and in respect to notice to the defendant.

2. SAME—EXTENT OF INQUIRY—RECORD.

Such inquiry can be made, although the record of the judgment shows a service upon or an appearance by the defendant.

3. SAME—JUDGMENT AGAINST SEVERAL—ALABAMA CODE.

Under the Alabama Code a judgment against two or more is several as well as joint, and, in the event of the death of one of the joint obligors pending the suit, a judgment may be rendered against the survivors. It seems that an omission to suggest the death of one of the parties upon the record does not make the judgment void against the survivor.

4. SAME—JUDGMENT AGAINST SURVIVORS NOT NAMED.

In Alabama a judgment against the parties named therein, "or such of them as are now surviving," is a valid judgment against the survivors.

5. SAME—SERVICE ON MEMBER OF LAW FIRM AFTER DISSOLUTION.

The mere fact of the dissolution of a law firm does not necessarily dissolve the agency of each member, and the service of a notice of appeal, after such dissolution, on a member of the firm, who was both attorney and counsel, and who equally with his partner was charged with the management of the suit, will be sufficient to bind the client.

6. SAME—JUDGMENT OBTAINED THROUGH NEGLIGENCE OF ATTORNEY.

The laches or the negligence of an attorney, when there is no fraudulent combination or collusion with the opposing counsel, will not render void a judgment in favor of the successful party.

7. SAME—ERRORS IN RECORD—JURISDICTION.

In an action on a judgment obtained in another state, it is of no avail to show that there are errors in the record, unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power.

8. SAME—ALLOWANCE OF INTEREST.

In an action on a judgment, the amount of which was doubled by 8 per cent. interest, a portion of which was compounded, the court may refuse to allow interest on the judgment.

At Law.

*Charles R. Ingersoll,* for plaintiffs.

*William Hamersley* and *Orville H. Platt,* for defendants.

SHIPMAN, J.    The first two named causes are actions at law upon judgments rendered by the chancery court for the Eighth district, Southern chancery division, of the state of Alabama, in favor of Mary A. Downs; one being against the members of the firm of Hopkins, Allen & Co., and the other against John Allen, one of said firm.    The third case is a bill in equity, by said Allen, to restrain the defendants from prosecuting said actions at law, upon the ground that said judgments

were fraudulently obtained and are void. A trial by jury of said actions at law having been duly waived by written stipulation of the parties, said causes were tried by the court, and the following facts were found to have been proved and to be true:

On the first of July, 1855, the firm of Hopkins, Allen & Co., theretofore existing in the city of New York, and composed of Lucius Hopkins, William Allen, John Allen, Walter H. Bulkley, and James McLean, ceased to do business, and existed thereafter only for the purpose of liquidation. Lucius Hopkins and John Allen, in pursuance of the articles of partnership, settled the business of the firm, and used the partnership name for that purpose. Mr. Bulkley died before March 14, 1872. William Allen died on May 25, 1874. Mr. Hopkins died on September 27, 1876. Mr. McLean was not served with process in these actions at law. On September 27, 1855, George Cowles mortgaged to the said Hopkins, Allen & Co. a parcel of land in Montgomery, Alabama, to secure his note to said firm for $4,205.63, dated January 1, 1855, payable, with interest, on January 1, 1856; and on January 22, 1858, mortgaged the same land to James S. Brooks, administrator of E. A. Cowles, to secure a debt to the estate of said Cowles of about $10,000; and afterwards sold said land to William Cowles, who took and retained possession of the same until February 22, 1868. On March 17, 1868, in pursuance of their said mortgage, and after the 30 days' public notice, Hopkins, Allen & Co. sold said land at public auction, at the court-house door in Montgomery, and John Allen, being the highest bidder therefor, became the purchaser for the sum of $5,000. The purchase was made by Mr. Allen in pursuance of legal advice. By an instrument under seal, dated March 17, 1868, and signed "Hopkins, Allen & Co., by Lucius Hopkins," said firm purported to convey to John Allen their title to said land. About October 6, 1869, J. H. Lakin went into possession of said premises, under a contract with Mr. Allen, to buy the same for the sum of $7,250. On September 19, 1870, Mr. Allen and his wife duly executed a deed of the premises to said Lakin, which deed was to be held in escrow until he should pay the purchase money. On March 14, 1872, Lakin owed Allen about $1,100 on this contract.

By the law of Alabama a foreclosure sale of mortgaged property to a mortgagee is voidable at the election of the proper party in interest in a reasonable time after the sale. On March 14, 1872, Mary A. Downs, the daughter and sole heir of E. A. Cowles, and who became of age on June 27, 1871, and who was married while she was an infant, brought her bill in equity before the court of chancery in the Southern division of Alabama, praying, among other things, that the sale of said real estate by Hopkins, Allen & Co. to John Allen be set aside, and that they be required to account for the rents and profits of said premises, and for an account of said first-mortgage debt to the time of the said sale, and for a decree for the surplus of the proceeds of sale after satisfying the said mortgage. Hopkins, Allen & Co., the five members of said firm, being named, Lakin, William Cowles, and George Cowles were made defendants. Service was not made upon any of the members of said firm. John Allen employed Stone and Clopton, lawyers in Montgomery, to appear for him, and for Hopkins, Allen & Co., and to answer for them. These lawyers had also appeared for Lakin. After the answers had been filed, Mr. Troy, the attorney for the plaintiff, became satisfied that an administrator should be appointed upon the estate of E. A. Cowles, and should be made a party plaintiff, and so told Mr. Clopton, and asked him, for the purpose of saving delay and expense, to admit that if Hopkins, Allen & Co. were liable to anybody, they were liable to the plaintiff. Mr. Clopton asked Mr. Troy to elect to affirm the sale to Lakin; Troy replied that he had thus elected; whereupon the following stipulation was signed on or about January 24, 1874:

"*Mary A. Downs, by next friend,* v. *Hopkins, Allen & Co. et al.* In Chancery, at Montgomery.

"In this case it is admitted, to save costs and unnecessary litigations, that if the defendants, Hopkins, Allen & Co., or John Allen, are liable to any person on account of the matters alleged in the bill, or any of them, (which liability is not admitted,) that the complainant Mary A. Downs is entitled to the recovery for such liability, and complainant Mary A. Downs consents to affirm the sale of the mortgaged premises to J. H. Lakin, and waives any right she may have to set aside said sale; and we consent to a reference to the register to ascertain and state the matters of account between the parties.

"WATTS & TROY,
"For Complainant, and for Wm. and Geo. Cowles.
"STONE & CLOPTON,
"For Hopkins, Allen & Co. and Lakin."

John Allen had no knowledge of this stipulation. Such proceedings were afterwards had that, upon a finding that the total amount received by Hopkins, Allen & Co. above the mortgage debt, (treating the payments by Lakin to Allen as made to Hopkins, Allen & Co.,) with interest to November 20, 1875, was $1,852.18, a decree against said firm for that amount was entered on November 26, 1875; but the chancellor refused to charge the firm or John Allen with the rents or the rental value of the property while it was in the possession of the latter. Mr. Allen, who was then living in Connecticut, was asked by a Connecticut lawyer to pay this judgment, and refused. Thereupon, on January 3, 1877, the plaintiff appealed from the decree of the chancery court to the supreme court of Alabama. Notice of this appeal was served on January 6, 1877, upon Mr. Clopton; Stone & Clopton having dissolved partnership on March 6, 1876, upon the appointment of Mr. Stone to a judgeship in the supreme court. The statutes of Alabama in regard to appeals provide that they can be taken within two years from the date of the decree, and that service of the citation shall be made upon the appellee or his attorney. The supreme court held that the rents and profits after the sale must be applied to the reduction of the mortgage debt, reversed the decree of the chancellor, and remanded the cause. There was no argument before the supreme court in behalf of Mr. Allen, or of Hopkins, Allen & Co., and he was not informed of the appeal. Such proceedings were thereupon afterwards had that the net rents of said premises received by Mr. Allen while in possession thereof from March 17, 1868, to October 1, 1869, after deducting taxes, insurance, etc., were found to amount at the latter date to $710.23, and with interest to April 25, 1882, to $1,424.21; and it was further found that the $1,852.18 found to be due from Hopkins, Allen & Co. was, with interest from November 20, 1875, to April 25, 1882, $2,804.97. The court thereupon decreed as follows:

"It is therefore ordered, adjudged, and decreed that complainant have and recover of the said defendant John Allen said sum of fourteen hundred and twenty-four 21-100 ($1,424.21) dollars, for which execution may issue. It is thereupon further ordered, adjudged, and decreed that complainants have and recover of said defendants, Lucius Hopkins, William Allen, John Allen, James McLean, and Walter H. Bulkley, or such of them as are now surviving, said sum of twenty-eight hundred and four 97-100 ($2,804.97) dollars, for which execution may issue."

By the report made before the first decree, which report was confirmed, it was found that Hopkins, Allen & Co. had been overpaid their mortgage debt, on October 1, 1870, the sum of $665.41; $521.07, as interest on $665.41; and on the other payments after October 1, 1870, were included in the amount of $1,852.18. After the appeal to the supreme court, Mr. Allen's attorney does not seem to have been vigilant in the further conduct of the case. There

was no fraud at any time, on his part, by collusion with the opposing counsel, as charged in the bill. There was no opportunity to defend successfully against a judgment for some amount against Allen, Hopkins & Co., provided suit was brought in the name of the proper plaintiff. There was an opportunity, by testimony in regard to the rents and profits and the disbursements, to attempt to reduce the amount against Mr. Allen. The reason which probably induced the attorney's conduct after the appeal was that he had not received any money from Mr. Allen, from whom, however, he had not asked compensation.

Upon the foregoing finding of facts, divers questions of law arise, which remain to be considered. The plaintiff places her case upon the established principle that judgments of a court of one state of the United States can, in an action thereon in a court of another state, be inquired into only in respect to the jurisdiction of the foreign court over the person or subject-matter embraced in the judgment, and in respect to notice to the defendant. *Christmas* v. *Russell*, 5 Wall. 290; *Thompson* v. *Whitman*, 18 Wall. 457. Such inquiry can be made, although the record of the judgment shows a service upon or an appearance by the defendant. *Knowles* v. *Gas-light Co.* 19 Wall. 58. In this case service was not made upon any member of the firm of Hopkins, Allen & Co., and Mr. Allen had no legal authority to authorize an appearance for the other members; but he voluntarily and fully appeared for himself, through his attorneys, and by such general appearance he submitted himself to the jurisdiction of the court, and became personally bound by a valid judgment against himself individually. *Hull* v. *Lanning*, 91 U. S. 160; *Cooper* v. *Reynolds*, 10 Wall. 308; *Hill* v. *Mendenhall*, 21 Wall. 453. The question, therefore, is, are the judgments, or either of them, absolutely void, as against Mr. Allen, by virtue of any inherent defects therein?

The defendant says that the judgment against the five members of the firm of Hopkins, Allen & Co. by name, "or such of them as are now surviving," three of them being dead at the date of the rendition of the judgment, and no suggestion of the death of a defendant having been made on the record, is void; because a judgment against two or more, one of whom is dead, is a nullity against the dead defendant, and being void against one is void against all; and because of its uncertainty—it being in the alternative—and the survivors not being found nor named. It is true, that at the ancient common law a judgment against three, one of them having died pending the suit, would be reversed upon writ of error as against all, upon the principle that a judgment is an entirety, and is invalid against all if invalid against one, (2 Bac. Abr. "Error," M.; *Gaylord* v. *Payne*, 4 Conn. 190;) a principle still recognized in states where the common law has not been modified by statute. *Wright* v. *Andrews*, 130 Mass. 149. In many states, however, the effect of statutes has been to alter the nature of a joint judgment, and to make it several as well as joint, while in other states the principle has been relaxed.

Sections 2905 and 2913 of the Alabama Code are as follows:

"Sec. 2905. When two or more persons are jointly bound by judgment, bond, covenant, or promise in writing, of any description whatsoever, the obligation is, in law, several as well as joint."

"Sec. 2913. In suits against joint obligors, where one dies pending the suit, judgment may be rendered against the survivor at the trial term, and the suit be continued as to the representatives of the deceased obligor, and the judgments, when rendered, shall be several as to the survivors and the representatives of the deceased."

In *Fabel* v. *Boylin,* 55 Ala. 383, a judgment had been rendered against Fabel and Price, the latter being dead at the date of the judgment. Upon execution, Fabel's property was sold. Upon motion to set aside the sale, on the ground that the judgment was void, or at least voidable by reason of Price's death, the court said:

"This would make the judgment void against him, (Price,) but not against Fabel. If a motion had been made to vacate it as against Price, this would have been so done as to leave it in force against Fabel from the time of its rendition. Such a motion, not having been made, execution was properly issued, in conformity with the judgment against both, though, as was legally proper, it was enforced only against the property of Fabel."

It thus appears that an Alabama judgment against two or more is several as well as joint, (*Cox* v. *Harris,* 48 Ala. 538,) and that, in the event of the death of one of the joint obligors pending the suit, a judgment may be rendered against the survivors; and it further seems, from *Fabel* v. *Boylin,* that an omission to comply with the provisions of another section of the Code, in regard to the suggestion of the death of a party upon the record, does not make the judgment void against the survivor. The legal effect, then, of the judgment against the five members of the firm of Hopkins, Allen & Co. is a judgment against the survivors.

But it is earnestly urged that the judgment, being in the alternative, is uncertain, and therefore void by reason of its uncertainty, and because the survivors are neither found nor named. It is not necessary to determine what would be, in general, the effect of a money judgment, against several persons, in the alternative; for these judgments are to be looked at in the light of the Alabama statutes, and the decisions which have been cited. Remembering that the judgment against the five named persons is, in legal effect, a judgment against the survivors, the words, "or such of them as are now surviving," cannot be considered to have been used in the alternative, in the sense of offering a choice or making a distinction between two sets of defendants. " 'Or' is often used to express an alternative of terms, definitions, or explanations of the same thing in different words." Webster, Dict. It was used in this case to explain the meaning of the preceding clause, and the same persons were meant by both expressions. If a judgment against five named persons, three of whom are dead, is good against the survivors, it naturally follows that it is not incumbent upon the court, in order to make a valid judgment, to name the survivors. The considerations which have been already sug-

gested in regard to the nature of judgments against two or more are applicable to another point made by the defendant's counsel, and which is that a judgment against three persons not served, two of whom did not appear, and for whom the third had no authority to appear, being void as against the two, is also void against the third, who did voluntarily appear.

It is next insisted that the judgment against Mr. Allen individually is void because service of the notice of appeal was made upon Mr. Clopton, who, it is said, ceased to be Allen's attorney upon the dissolution of the firm of Stone & Clopton.

Service of a citation upon the law partner of a deceased attorney of record, the partner not affirmatively appearing to have been attorney or counsel in the cause in which the appeal is taken, is not good, (*Bacon* v. *Hart*, 1 Black, 38;) but in this case Mr. Clopton affirmatively appears to have been both attorney and counsel, and to have been, equally with Mr. Stone, charged with the management of the cause. The mere fact of the dissolution of a law firm does not necessarily dissolve the agency of each member, but the dissolution of the agency of a particular member must, I think, depend upon questions of fact; and in this case Mr. Clopton continued to be what he was before, the actual attorney of Mr. Allen. I do not propose to consider what may be the effect of the dissolution of a commercial partnership upon the relation of the members of such partnership as selling agents or factors for others.

Upon the bill to set aside the judgments for fraud, the conduct of the defendant's attorneys in making the stipulation, and in not attending to the cause after the appeal, is attacked. If the stipulation had not been entered into, the effect would not have been to cause an abandonment of the existing suit and the institution of a new one, but simply a delay, and the amendment of the bill or the filing of a supplemental bill. The agreement of Stone & Clopton was not in excess of their authority, which extended to all proceedings in good faith naturally incident to the management of the existing cause while it was pending in court. They were not authorized to make agreements by way of compromise or settlement of the cause, or agreements to keep alive a cause, which, but for such agreement, must be abandoned; but the stipulation which they made was not of such a character. The wisdom or the imprudence of their agreement I am not called upon to examine, but there was no fraudulent combination with the plaintiffs' lawyer to sacrifice Mr. Allen or to benefit Mr. Lakin. So, also, while I think that Mr. Clopton was neglectful in the management of the cause after the appeal, his conduct was not fraudulent, and it cannot be that the laches or the negligence of an attorney, when there is no fraudulent combination or collusion with the opposing counsel, will have the effect of rendering void a judgment in favor of the successful party. *Wynn* v. *Wilson*, 7 Hempst. 699.

Other objections are made to the judgment, on the ground that the

decree is not in conformity to the bill, and that the plaintiff could not properly bring the bill in her own name, but "it is of no avail to show that there are errors in the record, unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power." *Cooper* v. *Reynolds*, 10 Wall. 308.

In an action upon a judgment, interest thereon is, as a rule, allowed by the courts of this country, in the absence of a compulsory statute, upon the amount of the original judgment, as damages for the detention of the money, and as equitably incident to the debt. *Williams* v. *American Bank*, 4 Metc. 317; *Klock* v. *Robinson*, 22 Wend. 157; *Nelson* v. *Felder*, 7 Rich. (S. C.) Eq. 395. This is the general rule, but exceptional cases arise where it is inequitable that interest, by way of damages, should be allowed. *Redfield* v. *Ystalyfera Co.* 110 U. S. 174; S. C. 3 Sup. Ct. Rep. 570.

The judgment of $1,424.21 is made up of $719.23 principal and $713.98 interest, at 8 per cent., the legal rate. In the original amount of $1,852.18, found to be due from Allen, Hopkins & Co., $521.07 interest are included. Five years and seven months' interest upon that interest is included in the judgment of $2,804.97. The amount of the two judgments is $4,226.18, of which $2,187.84 is interest at 8 per cent. If interest should now be allowed upon these two judgments, a large and inequitable compounding of interest would be the result. In the case against John Allen let judgment be entered against the defendant for $1,424.21, and costs; and in the case against John Allen and James McLean, (McLean not served,) let judgment be entered against said Allen for $2,804.97, and costs. The bill in equity is dismissed, without costs.