The People of the State of New York *v.* The Third National Bank of Syracuse, Appellant and Respondent, and William C. Rodger, Respondent and Appellant, Impleaded with Others.

1. Assignment of Reserve Money under State Contracts for Work on Canals. Certain contractors with the state for work on the canals, under contracts which provided for monthly payments, and that the state should reserve fifteen per cent on each monthly estimate until the whole work was completed, and for full payment on final account and estimate, assigned to a bank, as security for loans, "all of the reserve money or 15 per cent held by the state of New York on monthly *or all* estimates for the completion of the aforesaid mentioned contracts now due or to become due to them on said contracts." The words "or all" were interlined, and the bank claimed that their effect was to make the assignment apply to all that appeared due the contractors on the final estimate. *Held,* that the meaning was to assign to the bank merely the "reserve money" which should be constituted by the fifteen per cent withheld on estimates for payments made during the progress of the work at whatever time they might be made; and, hence, that the bank had no interest in the final estimate of sums due upon the completion of the work, except so far as those final estimates included such reserve money.

2. CLAIM OF SURETY OF CONTRACTORS UPON CONTRACT MONEY. A surety for the contractors advanced them money to pay for work and materials, and paid money to the state on account of an indebtedness of the contractors arising from their abandonment of one of the contracts and its completion by the state, and received from the contractors an assignment of all moneys due or to become due under the contracts, with a provision that such assignment should not be deemed in opposition to the prior assignment to the bank. On completion of the whole work, a sum was found due the contractors, and their surety claimed a right therein superior to that of the bank, on the ground that he was entitled to be subrogated to the rights of the state. *Held*, that this claim was not tenable.

3. RESERVE MONEY UNDER ABANDONED CONTRACT. The state, in completing the work under the contract which had been abandoned by the contractors, absorbed the moneys which had been reserved from the contractors upon monthly estimates under that contract. *Held*, that the assignment to the bank with respect to the reserve money was subject to the prior claim of the state.

*People* v. *Third Nat. Bank*, 8 App. Div. 616, affirmed.

(Submitted May 3, 1899; decided June 6, 1899.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 20, 1896, affirming a judgment entered upon a decision of the court on trial at Circuit without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis Marshall* for Third National Bank. The fair meaning and interpretation of the assignment to the Third National Bank, when read in connection with all the circumstances, is, that all moneys payable by the state to McLean & Rockwell upon the contracts in question, less eighty-five per cent of monthly estimates, were pledged as a security to the bank for the payment of the indebtedness of McLean & Rockwell to it. (Jones on Const. of Cont. § 210 ; 2 Pars. on Cont. 502 ; 1 Add. on Cont. 181; *Coyne* v. *Weaver*, 84 N. Y. 386; *Barhydt* v. *Ellis*, 45 N. Y. 107; *Robertson* v. *French*, 4 East, 360; *Harper* v. *A. M. Ins. Co.*, 17 N. Y. 194; *Clark* v. *Woodruff*, 83 N. Y. 518; *Turner* v. *Jaycox*, 40 N. Y. 470;

*Clark* v. *N. Y. L. Ins. & T. Co.*, 64 N. Y. 38; *Burr* v. *A. S. S. B. Co.*, 81 N. Y. 178; *Hurd* v. *J. P. I. Co.*, 13 Misc. Rep. 643; *Kellogg* v. *Norman*, 74 N. Y. 596.)

*Arthur L. Andrews* for Rodger. The Third National Bank, under its assignment, took only the fifteen per cent of the monthly estimates constituting the reserve fund, and that subject to the terms of the canal contract and the equities which existed in favor of the state, or any person claiming by or through it. (L. 1872, ch. 850; L. 1873, ch. 766.) The defendant Rodger is entitled to be subrogated to the rights of the state under these contracts, since he, as surety, was compelled, in order to save himself and prevent great loss, to complete the works, and did this at a great expense. (*Cotrell's Appeal*, 23 Penn. St. 294; *Cole* v. *Malcolm*, 66 N. Y. 366; *Acer* v. *Hotchkiss*, 97 N. Y. 395; *Pease* v. *Egan*, 131 N. Y. 262; *Lewis* v. *Palmer*, 28 N. Y. 271; *Ladderdale* v. *Robinson*, 2 Brock. 159; *Clason* v. *Morris*, 10 Johns. 525; *Shutts* v. *Fingar*, 100 N. Y. 543; *Mathews* v. *Aikin*, 1 N. Y. 600; *Casent* v. *Maxwell*, 39 Minn. 391.) The money now due from the state was earned by Rodger, and was not and could not be assigned by the original contractors. (*Osborn* v. *Thomas*, 46 Barb. 514; *Coates* v. *F. Nat. Bank*, 91 N. Y. 20; *Spicer* v. *Snyder*, 34 N. Y. S. R. 376; *Mersereau* v. *Villari*, 74 Hun, 59.)

GRAY, J. This action was brought by the People of the State, in the nature of an interpleader, for the purpose of determining the claims of the several defendants to a sum of money due from the plaintiff to McLean and Rockwell, under certain contracts made with them in August, 1887, for work upon the canals of the state. There were three of these contracts with the state; one relating to lock No. 7 on the Oswego canal and two to locks Nos. 35 and 72 on the Erie canal. It was provided, among other things, in these contracts, " that fifteen per cent of the amount of work done or materials furnished under this contract, at the contract price thereof, shall

be reserved by the superintendent of public works until the whole work which is the subject of contract shall be fully and entirely completed;" that "within twenty days from the expiration of each month   *   *   *   the superintendent of public works will pay such sums as shall not, together with former payments, exceed the amount actually due under this contract, according to the estimate of the engineer, except the sum due on the final account;" and, further, that "within ninety days after the work shall have been fully completed," a final account and estimate shall be made, upon which, after approval, the superintendent is to pay what should thereby appear to remain due. The scheme of these contracts, evidently, was to accumulate a reserve fund of fifteen per cent upon each monthly payment which might be made to the contractors, for the security of the state against a failure to properly perform the contract according to its terms. This reserve fund, upon the satisfactory completion of the work, together with what should have been earned in the last month, the final account and estimate would show to remain due to the contractors. The contracts for lock No. 72 on the Erie canal and for lock No. 7 on the Oswego canal were fully performed and there remained due upon them from the state moneys amounting, in the aggregate, to the sum of $10,486.47; which the plaintiff is ready to pay, with interest at the rate of three per cent, upon the priority of the conflicting claims of these defendants being determined.

In January, 1888, the contractors, McLean and Rockwell, executed an assignment to the defendant, the Third National Bank of Syracuse; which, after reciting the contracts and the desire of the contractors to borrow money from time to time of the bank, assigned to it, for the purpose of securing any such loans, "all of the reserve money or (15 per cent) fifteen per cent held by the state of New York on monthly or all estimates for the completion of the aforesaid mentioned contracts now due or to become due to them on said contracts." The assignment was filed with the superintendent and, thereupon, the bank made loans to the contractors, which amounted,

49

with interest, at the time of the trial, to $10,984.94, and it claims that the whole of the fund due from the state should be applied in payment.

The defendant, William C. Rodger, and E. C. Johnson were sureties on the bonds given by the contractors to the plaintiff for the faithful performance of their contract and for the payment of labor and wages.

The contractors failed to perform the contract for work on lock No. 35 of the Erie canal, and an abandonment being declared, the state, under the provisions of the contract, completed the same at a cost which brought the contractors into its debt, in the sum of $7,000. Until that indebtedness was discharged by them, the superintendent of public works refused to make any payment to the contractors upon their other contracts. Thereupon, an arrangement was made between the contractors and the defendant Rodger, by which the latter agreed to pay to the state the sum of $5,056.80, upon the indebtedness and Johnson, the other surety, paid the remainder. It was agreed between the contractors and Rodger, at the time, that, if the indebtedness was discharged, Rodger should have what moneys were then due, or were to become due, from the state on the other contracts. When the indebtedness of the state was discharged, payment of what was due to the contractors was then made, amounting to $8,200, to both Rodger and Johnson; who applied the amount upon wages then due from the contractors to their laborers. Subsequently the defendant Rodger, at the request of the contractors, paid out the further sum of $4,100, for the completion of the work on locks Nos. 7 and 72, upon the promise that he should have what money was coming to the contractors from the plaintiff under the contracts relating to those two locks. There thus resulted an indebtedness from the contractors to Rodger of about $9,100. This is the basis of their claim to the fund held by the state.

The third claimant was the defendant Alexander Reid; to whom the contractors, subsequently to the above assignment, assigned the moneys due or to become due from the state; but

this claim had no priority over the others and is not the subject of appeal.

The trial court has decided, and its judgment has been affirmed by the Appellate Division in the third department, that the claim of the bank under its assignment was limited strictly to "the reserve money," which, under the contracts, the state was to withhold upon the monthly estimates, and that it had no interest in the final estimates of sums due upon the completion of the work; except so far as those final estimates would include such "reserve money." The result was to award to the bank, of the fund held by the state and involved in this action, the sum of $6,261. Rodger was awarded the remainder of the fund, amounting to the sum of $4,225.47.

It was, and it is now, the contention of the appellant bank, that, by the fair interpretation of its assignment, all moneys payable by the state to the contractors under these contracts, less eighty-five per cent of the monthly estimates, were pledged to it as a security for the payment of its indebtedness. The clause of the assignment already above quoted, and upon which the determination of the question of the right of the bank depends, reads " all of the reserve money or (15 per cent) fifteen per cent held by the state of New York on monthly or all estimates for the completion of the aforesaid mentioned contracts," etc. The words " or all " in the clause appear to have been interlined, and the argument is that they convey the idea that something more than the reserve money of fifteen per cent on monthly estimates was intended by the parties. It is insisted that they enlarge the scope of the assignment, so as to make it operate upon the moneys included in all estimates, which would comprehend the final estimates. If the contention be correct then the assignment would carry, not merely the fifteen per cent reserved on each monthly estimate, but, also, all that, upon the completion of the work, would then appear, upon a final estimate, to be due from the state. In other words, the bank's claim is that the fund which, upon the completion of the work, would be shown by the final estimate to be due to the con-

tractors, comprehending, necessarily, the accumulated reserve money upon monthly estimates and what then remained due for the work since the last monthly estimate, was pledged to it. Doubtless some confusion of thought may be caused by the insertion of the words " or all; " but it is more apparent than real. If the words " or all " were eliminated, the moneys pledged to the bank by the assignment would be, unquestionably, the fifteen per cent withheld upon monthly estimates. By the addition of the words " or all," however, the contingency would appear to have been contemplated of estimates made during the progress of the work, other than monthly. It was, probably, intended that such, if made, should, also, come within the assignment; so that, upon whatever estimates for payments during the progress of the work the state should reserve the fifteen per cent, the pledge of the assignment would fully operate. If it was intended by the insertion of these words to include, as the subject of assignment, more than the fifteen per cent reserved on monthly estimates, namely, all that appeared due on the final estimates, then it was a most awkward and unnatural mode of expression and one which does not satisfactorily convey to the mind such an intention. If that really was the intention of the parties, it could have been more simply and more certainly expressed. It would have been sufficient to say, after describing the reserve money of fifteen per cent held on monthly estimates, something to the effect that all other moneys to become due from the state on final estimates were pledged. It seems to me the more rational reading of the assignment that a particular fund, which would accumulate under the provisions of the contract in the hands of the state from the reservation of fifteen per cent on each monthly estimate, was in the contemplation of the parties as the subject of the pledge to the bank to secure such loans as it might make to the contractors. That would be the " reserve money " referred to in the clause of the assignment and what follows those words is rather descriptive of their meaning. The word " or," in a grammatical sense, is here equivalent to " being." Thus it would read,

"All of the reserve money, *being* fifteen per cent held by the state on monthly or all estimates," etc.   It is evident that there could be no reserve upon the final estimate of moneys due when the contracts were performed; for whatever moneys were earned since the last month would be payable in' full.   I do not think we should attribute to the insertion of the words "or all" a purpose to enlarge the scope of the assignment, when it is possible to give to them an office consistent with the dominant idea of the instrument, that what was pledged to the bank was all of the reserve which, under the contracts, should be constituted by the fifteen per cent withheld on esti- mates for payments made during the progress of the work, at whatever times they might be made.   We should read these words in the spirit of the whole instrument and in the light of the circumstances, and make them subserve, if of ambiguous import, its obvious purpose; rather than subject the instru- ment to their use.   I am satisfied that the conclusion reached by the learned trial judge with respect to the claim of the bank is correct and just.

The claim of the appellant Rodger to a preference over the bank is governed by several considerations, which militate strongly against its correctness or justness.   When he made the payment to the superintendent of public works upon the indebt- edness arising on the part of the contractors, by reason of their abandonment of the contract for lock No. 35, he was one of the sureties upon the contractors' bonds and the result of the pay- ment of the indebtedness was to release certain moneys then due to them upon the other contracts and to make them available for the purpose of paying wages.   It was in his own interest as surety and was, as between him and the contractors, an advance of so much money, by which the contractors were enabled to go on with the contracts.   That, too, upon a consideration of the evidence, was the nature of the subsequent payment by Rodger of the $4,100.   It was, in effect, nothing more than an advance by him of moneys to pay for work and materials, under the contractors' agreement that he should have the moneys due and to become due under the contracts.   But at the time of

its making, as he admits in his own testimony, he was informed by one of the contractors that he was not to receive any of the funds assigned to the bank. He testified explicitly that he understood about the assignment to the bank. When, later, a formal assignment in writing was made to him by the contractors, on June 7th, 1888, of all moneys due or to grow due upon the contracts, for the payment to him of moneys which had been, or thereafter might be advanced, or expended, or paid out in the completion of the contracts, it was in express terms stated that the assignment was not "to be deemed to be in any respect in opposition to certain assignments of moneys upon the above-mentioned contracts or some of them heretofore executed by said firm of McLean and Rockwell to the Third National Bank of Syracuse." It is perfectly clear, throughout the transaction, which resulted in the payment of moneys by Rodger for the contractors, whether to discharge their indebtedness to the state, or to enable them to complete the contracts, that he was aware of the prior assignment to the bank, and, therefore, it is not easy to recognize his superior equity. He invokes in aid of his claim the doctrine of the right of subrogation and it is his claim that he is "entitled to be subrogated to the rights of the state under these contracts, since he, as surety, was compelled, in order to save himself and prevent great loss, to complete the works." That is not the claim set up in his answer; but he claims that he is entitled to take that position under equitable rules. His contention is rendered somewhat untenable by the finding of the trial court, upon the clear evidence, that whatever assignment or pledge was made to him by the contractors of the moneys to become due under the contracts from the state, he took with knowledge of the prior rights of the bank and under an agreement that those rights were not to be affected by his assignment. I think, indeed, that the strictly equitable view is adverse to his claim to be preferred over the bank; inasmuch as the loans which the bank made to the contractors enabled them to do their work and to earn moneys under their contracts; and this resulted to the benefit of Rodger, as their surety. I cannot

see how the doctrine of subrogation, which rests upon the mere equities raised by the relations between the parties, is available to the appellant Rodger. The payment made by him to the state was in order to release the moneys payable to the contractors upon the other contracts, which were in the course of performance, and to make them available to pay the claims of laborers, towards whom he had assumed a liability as surety for the contractors. With respect to that and the subsequent payment by him to complete the contracts, each was, in effect, an advance and the circumstances raised no superior equity in favor of Rodger as against the bank. The payments were made upon the promise of the contractors that he should be repaid from the moneys coming from the state; but it was understood to be subject to the prior claims of the bank to be reimbursed its advances. A specific fund had been assigned to the bank to secure the contractors' loans and nothing could divert the security from application to that purpose for which pledged.

There is but one question remaining; as to which little need be said. The bank claims that it is entitled, under its assignment, to fifteen per cent of the amount paid by the state to the contractors upon lock No. 35 of the Erie canal. The contract for that work was abandoned by the contractors and, under its provisions, the state took up the work and completed it; absorbing, in doing so, the moneys which had been reserved from the contractors upon monthly estimates and bringing them into its debt. The assignment to the bank, with respect to the reserve money under the contract, was, of course, subject to the prior claim of the state, which resulted in the forfeiture of the fifteen per cent reserved on the monthly estimates. The bank could not be entitled to any reserve moneys under these contracts, except as they would become due to the contractors upon the completion of the work.

I think this case was correctly decided and that the judgment appealed from should be affirmed, without costs.

All concur, except Vann, J., not voting.

Judgment affirmed, without costs.