## ALASKA GOLD RECOVERY CO. et al. v. NORTHERN MINING & TRADING CO.

Second Division.   Nome.   October 8, 1927.

No. 2976.

1. **Eminent Domain** ☞263—**Error in proceeding by owner of placer mine to condemn way for aerial tram, in that use described was not within statute, held cured by election authorized by reviewing court to cut down claim (Comp. Laws 1913, § 129; Laws 1913, c. 55, §§ 1, 2).**

   Where owner of placer mine, mining under Comp. Laws 1913, § 129, sought to condemn right of way for aerial tram, or part of tram, as authorized by Laws 1913, c. 55, §§ 1, 2, and reviewing court reversed decision for plaintiff on ground that use described was not authorized by statute, giving plaintiff right to elect to cut down claim, error *held* cured by such election.

2. **Eminent Domain** ☞228—**Judge may appoint commissioners to appraise damages for condemnation of way for aerial tram without making finding (Laws 1913, c. 55, §§ 1, 2; Comp. Laws 1913, § 642, subd. 4).**

   In proceeding under Laws 1913, c. 55, §§ 1, 2, by owner of placer mine to acquire right of way for aerial tram, or part of aerial tram, no finding is necessary to issuance of order appointing commissioners to appraise damages, since, under Comp. Laws 1913, § 642, subd. 4, court must make such order, if satisfied that public interests require taking.

3. **Appeal and Error** ☞1198—**Mandate of reviewing court must be followed.**

   Where appeal was granted and considered by Circuit Court of Appeals, District Court is bound to follow directions of mandate, notwithstanding it was very questionable whether there was anything from which to appeal.

4. **Appeal and Error** ☞108—**Findings are not appealable, but may be reviewed on appeals from judgments.**

   In judicial practice, findings are not appealable, except as they may be reviewed on appeals from judgments.

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Eminent Domain ⬳263—Where error in condemnation proceeding was cured by election to cut down claim, "further proceedings" required only reappointment of commissioners to appraise damages, and not new trial or restitution of premises (Laws 1913, c. 55, §§ 1, 2).

Where, in proceeding under Laws 1913, c. 55, §§ 1, 2, by owner of placer mine to condemn right of way for aerial tram, error, in that use described was not authorized by statute, was cured by plaintiff electing to cut down claim, "further proceedings" ordered by reviewing court *held* not to require new trial or restitution of premises, but only reappointment of commissioners to appraise damages under new order of things.

6. Eminent Domain ⬳263—Where new trial was not ordered on remand in condemnation proceeding, leave to file supplemental answer held denied (Laws 1913, c. 55, §§ 1, 2).

Where new trial was not ordered by mandate on remand of proceeding by owner of placer mine to condemn right of way for aerial tram, under Laws 1913, c. 55, §§ 1, 2, leave to file supplemental answer *held* denied.

7. Eminent Domain ⬳76—Placer miner, seeking to condemn way for aerial tram, having deposited in court amount awarded as damages, held entitled to possession during pendency of proceedings (Laws 1913, c. 55, §§ 1, 2; Comp. Laws 1913, § 651).

Where, in proceeding by owner of placer mine, under Laws 1913, c. 55, §§ 1, 2, to condemn right of way for aerial tram, amount awarded as damages was deposited in court, plaintiff was entitled to possession during pendency of proceeding, under Comp. Laws 1913, § 651, especially where writ of restitution had been denied, and vacation of order putting plaintiffs in possession would be inconsistent with defendant's appeal.

8. Eminent Domain ⬳76—Plaintiff's deposit in court of amount awarded as damages for way for aerial tram held considered just compensation till damages are reassessed after reversal of order appointing commissioners (Laws 1913, c. 55, §§ 1, 2; Comp. Laws 1913, § 651).

Where, in placer miner's proceeding under Laws 1913, c. 55, §§ 1, 2, to condemn right of way for aerial tram, order appointing commissioners was reversed, plaintiff's deposit in court of amount awarded as damages shall, under Comp. Laws 1913, § 651, be considered just compensation till damages are reassessed, where mandate did not contravene award of commissioners as to amount of damages.

9. Eminent Domain ⬳265(4)—Defendants, having secured reversal, held entitled to judgment for costs on writ of error (Laws 1913, c. 55, §§ 1, 2).

Where, on defendants' appeal and writ of error from "interlocutory judgment" and order appointing commissioners in placer miner's proceeding, under Laws 1913, c. 55, §§ 1, 2, to condemn right of way for aerial tram, there was reversal and case was re-

⬳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

manded for further proceedings, defendants *held* entitled to judgment for costs on writ of error.

10. **Eminent Domain** ⬉263—**Placer miner, seeking to condemn way for aerial tram, who cured error in proceedings by cutting down claim, held not entitled to final decree before appraisal (Laws 1913, c. 55, §§ 1, 2).**

   Placer miner, in proceeding under Laws 1913, c. 55, §§ 1, 2, to condemn right of way for aerial tram, who cured error by cutting down claim, *held* not entitled to final decree before reappointment of commissioners to appraise damages; motion for final decree being premature.

11. **Eminent Domain** ⬉166—**Placer miner's proceeding to acquire way for aerial tram is action for condemnation, as incident to which ancillary proceedings are permitted to determine compensation (Laws 1913, c. 55, §§ 1, 2).**

   Action by placer miner, under Laws 1913, c. 55, §§ 1, 2, to acquire right of way for aerial tram, is action for condemnation, as incident to which ancillary proceedings for benefit of defendant are permitted to satisfy constitutional provision as to just compensation, and the two proceedings should be distinguished.

Suit by the Alaska Gold Recovery Company and others against the Northern Mining & Trading Company to condemn a right of way for an aerial tram. After remand from the Circuit Court of Appeals (20 F.[2d] 5), defendants moved (a) for an order vacating an order for possession by plaintiffs; (b) for an order vacating appraisement; (c) for restitution of premises; (d) for leave to file supplemental answer; (e) for a new trial; and (f) for a judgment for costs on writ of error; and plaintiffs moved (a) to file election and amended election; (b) for an order to continue in possession; (c) for reappointment of commissioners; and (d) for final decree. Defendant's motions (a), (b), (c), (d), and (e) denied. Defendant's motion (f) allowed. Plaintiffs' motions (a), (b), and (c) allowed. Plaintiffs' motion (d) denied.

The above-entitled action coming on for "further proceedings," upon the filing of the mandate and opinion of the Circuit Court of Appeals (20 F.[2d] '5') and a reversal of the "interlocutory judgment," so-called appointing commissioners to appraise the damages for taking of an "easement" on 90/100 acres of defendant's mining claim, for public use, the court is now confronted with a series of motions, as follows:

1. Defendant moves (a) for an order vacating the court's or-

der for possession after appraisement and report of the commissioners and after the deposit in court of the amount of their award, $101 (denied); (b) for an order vacating the appraisement (denied); and (c) for restitution of the premises (denied).

2. Plaintiffs served and filed notice of election to claim only for uses indicated by opinion of the appellate court as within the statutes, to wit, the right of way for an aerial tram and hoist (power) to operate same, and also an amended election (allowed).

3. Plaintiffs moved (a) for an order to continue plaintiffs in possession until final order of condemnation (allowed); (b) for reformation and correction of order appealed from, and for reappointment of the commissioners, in accord with the mandate and opinion (allowed).

4. Plaintiffs filed showing in opposition to defendant's motions No. 1 (a), (b), and (c) above.

5. Defendant filed objections to plaintiffs' motions and counter motions, No. 3 above, with leave to reargue demurrers (overruled). Defendant also filed motion for leave 'to file supplemental answer, showing that plaintiffs had parted with their interests by execution sale of personal property on the ground and given a lease to a third party (denied).

6. Defendant made motion and demand for a new trial on all questions of law and fact (denied).

7. Defendant's appeal from the award of damages is still pending, unless the same fell or was disposed of by reversal of the order appointing commissioners, as is now claimed by the defendant.

George D. Schofield, of Nome, for plaintiffs.

Ira D. Orton, of Nome, and Thomas R. Lyons, of Seattle, Wash., for defendant.

LOMEN, District Judge. The court will consider the several motions, collectively, so far as they bear upon or militate against each other, but will dispose of them severally according to such light as the facts, "the law of the case" (the mandate and opinion), and the statutes seem to warrant. We have reached a point or points in the "further proceedings" where counsel for the parties are in hopeless disagreement. They are at sword's points, and fight every inch of the ground, even driving the court into an apparent cul de sac or blind alley, from which it is left to extricate itself.

To somewhat clarify the situation, we observe that defendant is the owner of certain mining claims at or near the mouth of Daniels creek on the coast of Bering Sea. Between said claims and the line of high tide plaintiffs own a narrow placer claim (too narrow, in fact, to carry all of an aerial tram necessary to the economical and efficient mining of their claim) and the adjoining government lands, to wit, the beach between high and low tide and the adjoining land under the waters of Bering Sea. These the plaintiffs propose to mine and are now mining under the act of Congress (section 129, Compiled Laws of Alaska) granting to citizens of the United States the right to explore and mine "all land and shoal water between low and mean high tide on the shores, bays, and inlets of Bering Sea," but with the proviso that "no exclusive permit shall be granted by the Secretary of War authorizing any person or persons, corporation or company to excavate or mine under any of said waters below low tide," under the rules and regulations of the Secretary. "Such rules and regulations shall not, however, deprive miners on the beach of the right hereby given to dump tailings into or pump from the sea opposite their claims," etc.

Plaintiffs have installed on their own claim a mining plant, pump, amalgamator, elevated sluiceway, jigs, ball mill, mast, poles, cables, bucket line, and other machinery. They require more room, for a right of way for an aerial tram, or part of an aerial tram, authorized by sections 1 and 2, chapter 55, Laws of Alaska 1913, together with "power for the operation" of such aerial tram. Id. The defendant strenuously opposes such use, although the commissioners appointed, without objection as to personnel, found that it would be damaged thereby only to the extent of $101.

The appellate court, on the appeal from the "findings" and order appointing commissioners, concluded, in view of the amended complaint, and especially of the "findings" of the court referred to in the order, that the plaintiffs sought to condemn and take a "site for a mining plant," as distinguished from an "aerial tram, with power to operate the same," and reversed the order. It is probable that the appellate court inferred from said findings (not having the benefit of the evidence in the case, or the report of the commissioners before them), that the mining plant on plaintiffs' ground was to be moved up onto defendant's ground. However, plaintiffs were given the right to "elect" to

take only as much as the statutes permitted.   This the plaintiffs have done by filing notice of such claim and making "election."

Defendant's position is that under the mandate and opinion it is now entitled to a "new trial on all questions of law and fact," including reargument of the demurrers; that, the order appealed from being reversed, the same was annulled, and that this reversal also annulled and vacated the appointment of the commissioners and their award of damages, and also annulled and vacated the order letting plaintiffs into possession; and that defendant is now entitled to restitution of the premises.

It is patent that defendant never asked for a new trial, and that none was granted by the mandate.   On the other hand, plaintiffs were given the right to elect to cut down their claim. Such "election" must have reference to the cutting down of the claim established by the findings—the general findings upon which a "judgment of condemnation" or "final judgment" would or could be made.   Sections 646 and 650.   These judgments had not been made at the time of the appeal or writ of error issued. No "finding" seems to be necessary to the issuance of the order appointing commissioners to appraise damages.   The language of the statute (section 642, subd. 4, Compiled Statutes of Alaska) is:

"If the court or judge is satisfied that the public interests require the taking of such lands, it or he *must* make an order appointing," etc.

The court or judge may be "satisfied" from the evidence without making any finding to that effect, or making general findings. The court did recite, however, and declare in the order itself, that it was "satisfied that the public interests require the taking," etc.   The order appealed from did attempt to describe the use for which the lands were intended "to be taken," and the majority court have now determined that such use as described was not within the uses authorized by the statutes, and hence that no order appointing commissioners could be made.   This would seem to be a determination "on the merits"—a short cut.   Compare Weiser v. L. & W. Co., 3 Ryan, 425.

That was the sole ground upon which the reversal was made. The error has now been cured by the election.   The question then arises: What is meant by the words "further proceedings," used in the mandate?   It is very questionable whether there was any-

thing from which to appeal, as the record of proceedings stood, at the time of appeal and writ of error. But, as the appeal was granted and considered, we are therefore bound to follow the directions of the mandate:

After reciting that "an interlocutory judgment and order appointing commissioners was duly entered on the 24th day of July, A. D. 1926, which said judgment is of record and fully set out in said cause in the office of the clerk of the said District Court, to which reference is hereby made, and the same is hereby expressly made a part hereof, · * * * which was brought into the United States Circuit Court of Appeals for the Ninth Circuit by virtue of an appeal and writ of error," the court continues:

"It is now here ordered, adjudged, and decreed by this court that said motion [of appellees and defendants in error] to dismiss be and hereby is denied, and that, the decree of said District Court in this cause be and hereby is reversed, with costs, * * * and that this. cause be and hereby is remanded to said District Court for further proceedings, in accordance with the opinion of this court, * * * as according to right and justice and the laws of the United States ought to be had."

The appellate court having thus referred to their opinion, the latter must be our guide in determining what the future or further proceedings shall be. Without such reference this court would, in view of the silence of the mandate and the authorities hereafter cited, have referred, in any event, to the opinion for the meaning of "further proceedings." The opinion clearly directs the further proceedings to be upon, and in accordance with, the status of the case after plaintiffs shall have filed their notice and claim of election to take under the statutes referred to in the opinion, to wit:

"Rights of way across private property, whenever the same shall be shown to be necessary for the operation of the mine or other project in connection with which it is intended to be used. * * * That the right of way for which provision is thus made [in the Alaska Code] shall extend only to a right of way along, upon, and across the surface of the lands to be condemned and a strip thereof of sufficient width to permit of the construction thereon of * * * or for setting poles or the construction of towers [masts] upon which to string wires [cables] for, * * * or power for the operation of, aerial trams and to permit of maintaining the same and keeping it in repair."

Now this is exactly the use that was intended in the order appointing appraisers, with the addition of a "power line," which

is not now included in the "election" referred to. It must have been so understood by the commissioners. The general findings were no part of the order to the commissioners.

The order appointing commissioners was, as we think, erroneously denominated an "interlocutory judgment." It was a misnomer. The general findings and conclusions were improperly or gratuitously referred to in the preamble of the order; this undoubtedly from an abundance of caution. The order needed no support from the findings. They might well have been made after the order. Misleadingly, the order also used the phrase, "it is ordered and adjudged," in describing the proposed use of the premises to be taken; i. e., "in case a final order of condemnation is hereafter entered herein." The order also singularly and improperly used the phrase, "it is further ordered and adjudged," instead of merely so declaring "that the court is satisfied that the public interests require the taking of such lands"; this after repeating the words of the statute (section 636) wherein it is provided what "must appear before property can be taken." This repetition was wholly unnecessary in the order. The court, depending upon the attorney for plaintiff, did not sufficiently scan the order prepared by the latter and did not make the corrections that should have been made. The language used probably accounts for the denomination of the order as an "interlocutory judgment," both in the order itself and in the opinion and mandate. A careful reading of the statutes will show, I think, that this was not the character of the order, and also that the latter was not an appealable order.

As to the "appeal" from the findings we are also of the opinion that the latter did not and could not constitute an "interlocutory judgment," or that the findings could be appealed from, or reached, except through an appeal from a judgment entered thereon. There was no appeal from any specific finding. In judicial practice, findings are not appealable, except as they may be reviewed on appeals from judgments. It cannot be presumed or inferred that Congress intended, by the words "any finding or judgment" (section 636), so radical a change in the procedure of courts as to authorize an appeal from a "finding" as such, or that by a blanket provision, and without reference to the amount involved, it intended to authorize such appeal. We think the word "or" should be construed to mean "to wit." Bouv. Law Dict. "Or"; Brown v. Com., 86 Mass. 59; People v. Bank, 159 N. Y.

382, 54 N. E. 35; Blumenthal v. Berkshire L. Ins. Co., 134 Mich. 216, 96 N. W. 17, 104 Am. St. Rep. 604; Anderson's Dictionary of Law, "Or"; "to wit," as used in a statute—citing People v. Latham, 203 Ill. 9, 67 N. E. 403; Commonwealth v. Grey, 2 Gray (68 Mass.) 501, 61 Am. Dec. 476; People v. Nordheim, 99 Ill. 553; State v. Boncher, 59 Wis. 477, 18 N. W. 335; Blemer v. People, 76 Ill. 265; Bryan v. Menefee, 21 Okl. 1, 95 P. 471. The word "judgment" is thus made to stand in apposition to "finding"—an explanation of the same thing. Downs v. Allen (C. C.) 22 F. 805. The findings are merged in the judgment—the latter based upon them.

Besides, on an appeal from "findings," without a record of the evidence, the appellate court could neither affirm nor reverse any finding; nor was any specific finding appealed from. The court, on the appeal, took the findings at their true worth, as they understood them, and did not pretend to reverse them. The reversal was necessarily of the order. Because the court understood the findings to mean what the statute did not authorize, they concluded that the order was not supported by the findings; and because the appellate court was helpless in the matter of making findings, it remanded the case, permitting plaintiffs to "elect" to take only so much as the pleadings and evidence showed them to be entitled to take under the statutes, and as indicated in the opinion of the appellate court. The election would thus cure the only "error" found by the appellate court. Such election has now been made. The "further proceedings" would therefore seem to be to proceed to a reappointment of commissioners to appraise the damages shown under the new order of things, and thence, as provided by statute, until final judgment is had. This does not call for a new trial or restitution of the premises.

We cannot regard the order appointing commissioners as appealable, nor calling for a writ of error under the statutes of eminent domain. In the first place, the statute makes such order obligatory on the judge or trial court, if it is "satisfied that the public interests require the taking of such lands." Section 642, Compiled Laws of Alaska. Such order could only be reviewed for an abuse of discretion, if at all. Besides, the order, when made, and the proceedings under it, would seem to operate, under section 651, "during the pendency and until the final conclusion of the proceedings and litigation." This would render an appeal from the order useless for any purpose that an appeal

from the "judgment of condemnation" mentioned in section 646, or the "final judgment" mentioned in section 650, would not better serve. Defendant has, besides, an appeal to a jury from the award of the commissioners. Such an appeal is now pending, and has been, since before the appeals resulting in the opinion and mandate.

A writ of error is issued only in law actions or proceedings and only after judgment—"to try the judgment, to correct an error, not to try questions between the parties." Kelly v. Strouse & Bros., 116 Ga. 872, 43 S. E. 280. "Without a judgment, or an award in the nature of a judgment, no writ of error doth lie." Drowne v. Stimpson, 2 Mass. 441, 445. The award comes after the appointment of commissioners and before a judgment of condemnation mentioned in section 646.

The assessment of damages, the award of the commissioners, provided for in section 643, is made with reference to "property sought to be appropriated" or "portion sought to be condemned," not to property already condemned at the time of their appointment. And section 646 provides that:

"Upon any verdict or assessment by commissioners becoming final judgment shall be entered declaring that upon payment of such verdict or assessment, * * * if any, the right to construct and maintain, * * * and to take, use, and appropriate the property, * * * , shall * * * be and remain in the plaintiff."

This seems to be the only "condemnation" provided for, before payment of the damages, the final judgment to be entered after such payment or a deposit thereof in court. No acts of the court seemed to be called for, other than the trial, prior to appointment of commissioners, which may be made by the judge. Findings and conclusions must, of course, precede judgment.

No "writ of error" is expressly authorized to be issued under the eminent domain statutes. And said statutes do not expressly allow "appeals" from any "order." But section 1337, Compiled Statutes of Alaska, provides:

"In all cases other than those in which a writ of error or appeal will lie direct to the Supreme Court of the United States as provided in section thirteen hundred and thirty-six, in which the amount involved or the value of the subject-matter in controversy shall exceed five hundred dollars, and in all criminal cases, writs of error and appeals shall lie from the District Court for Alaska or from any division thereof, to the Circuit Court of Appeals for the Ninth Circuit, and the judgments, orders, and decrees of said court shall be final in all such

cases." * * * Increased to $1,000 by Act Feb. 13, 1925 (28 USCA § 225 [U. S. Comp. St. § 1120]).

This statute, for some reason, was not given effect—did not "as in other cases," stated in section 636, apply? Was not the "value of the subject-matter in controversy" jurisdictional? Eaton v. Hogs (C. C. A.) 141 F. 64, 5 Ann. Cas. 487.

By the new order appointing commissioners, made necessary by the reversal of the first order, the defendant will indirectly get the benefit of two appeals, involving the same matter, the award of damages and a reassessment of the damages, without the intervention of a jury, and may, of course, again appeal from the second award, and, if our contention be wrong, also appeal from the new order, causing endless delays.

We have, because not justified nor directed by the mandate, overruled defendant's motions:

1. For a writ of restitution. A restitution under the circumstances would be speedily followed by a new order for repossession or continued possession. The action of the court is borne out by the following cases: Helena Power Transmission Co. v. Spratt et al., 37 Mont. 60, 94 P. 631; Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539. Restitution, if any, is ex gratia, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not demand it. 2 R. C. L. 293, § 246; Teasdale v. Stoller, 133 Mo. 645, 34 S. W. 873, 54 Am. St. Rep. 703; Gould v. McFall, 118 Pa. 455, 12 A. 336, 4 Am. St. Rep. 606; Spratt v. Helena, etc., Co., 37 Mont. 60, 94 P. 631.

2. For a new trial, for reasons already stated. Cowdery v. London & San Francisco Bank, 139 Cal. 298, 73 P. 196, 96 Am. St. Rep. 130. By the "appeal" it was not intended that the "cause as a whole should be transferred to the appellate court prior to the final decree." Ex parte National Enameling Co., 201 U. S. 156, 26 S. Ct. 404, 50 L. Ed. 707, and cases cited post, supporting reasons for our construction of the mandate.

3. For leave to file a supplemental answer. To grant such leave would be to disobey the directions of the mandate, and result in a new trial.

4. For an order annulling, vacating, and setting aside the order putting plaintiffs in possession, and vacating and setting aside all proceedings taken by the commissioners, including the

appraisement and assessment of damages made by them. The order putting plaintiffs in possession, if vacated, would make the plaintiffs trespassers, which they are not, properly speaking. And we have already refused an order for a writ of restitution. To vacate such order would also be inconsistent with defendant's appeal now pending and above referred to. The amount awarded as damages is also on deposit in the court, and still subject to be drawn down by defendant. This, in itself, entitles plaintiffs to an order for possession or continued possession "during the pendency and until the final conclusion of the proceedings and litigation." Section 651, Compiled Statutes of Alaska. The deposit, under the same section, until the damages are "reassessed or changed," shall be taken and considered "just compensation." The mandate does not contravene the award of the commissioners as to the "amount of damages." See and compare Gaines v. Rugg, 148 U. S. pages 238 and 239, 13 S. Ct. 611, 37 L. Ed. 432.

The defendant's motion for an order that the clerk of this court docket judgment for costs on the writ of error as shown by the mandate will be allowed.

Plaintiffs' motion to file their election and amended election and for a new order appointing commissioners will be allowed. Plaintiffs' motion for final decree is denied, as premature.

We have construed the mandate in the light of West v. Brashear, 14 Pet. 51, 10 L. Ed. 350; Gaines v. Rugg, 148 U. S. pages 238 and 239, 13 S. Ct. 611, 37 L. Ed. 432; Mundy v. Stevens (C. C. A.) 61 P. 77; Baltimore B. & L. Ass'n v. Alderson (C. C. A.) 99 F. 489; Ex parte National Enameling Co., 201 U. S. 156, 26 S. Ct. 404, 50 L. Ed. 707.

We also call attention to what was said in the case of Baltimore B. & L. Ass'n v. Alderson, supra, in the matter of the appointment of a receiver, and compare the appointment of commissioners and the summoning of a jury with same. The appointment here might well stand, except for the possible construction of the mandate to the contrary. Defendant cannot complain of the reappointment. Nor should it have complained of the original appointment—for *its* benefit made. In the opinion we find this clause:

"* * * However, if the plaintiffs should *elect to claim* only such rights as they are entitled to claim under the law, after the case is remanded, the latter question [the right of an administrator to maintain an action of this kind] is worthy of serious consideration."

In view of the fact that section 1 of chapter 55, Session Laws of Alaska, provides that the uses specified, "by whomever utilized," are each and all declared to be beneficial to the public, and to be a public use within the provisions of chapter 22, part 5, of the Alaska Code, and because the acts of administrators are controlled by probate courts, in the first instance, and because the administrator is an interested party, we leave it to the plaintiffs to take what course may seem necessary as to retaining the administrator as coplaintiff. We do not see how defendant's interests can be jeopardized thereby.

As we view the statutes, we regard the action as one for condemnation; but that, as incident to such action, and to satisfy the constitutional provision as to "just compensation," ancillary proceedings for the benefit of defendant are permitted. Each of the parties are thus entitled to judgment in the proceedings. The general findings relate to plaintiffs' case. The award of the commissioners or verdict of a jury relate to defendant's case. No findings are necessary to determine what is "just compensation," and the appointment of the commissioners cannot constitute a judgment, as we view it, any more than summoning a jury or giving them instructions. The two proceedings should be distinguished, as their purposes are different. Why should defendant, on the question of damages (compensation), be permitted to block the plaintiff from prosecuting his case to final judgment? The statutes do not contemplate it, because they provide against a stay of proceedings, and thus permit plaintiff to proceed to final judgment, when errors, if any, in the condemnation proceedings proper, may on appeal be passed on. These distinctions do not seem to have always been kept in mind, and hence we often find "confusion worse confounded."

Take the case of Van Dyke v. Midnight Sun Mining & Ditch Co. (C. C. A.) 177 F. 85, it was said: "From the findings *and* order of condemnation defendants bring error." In the case of State ex rel. Davis v. District Court, 29 Mont. 153, 74 P. 200, the appeal according to the Van Dyke Case was "from an order of condemnation." In Helena, etc., Co. v. Spratt, 35 Mont. 108, 88 P. 773, 8 L. R. A. (N. S.) 567, 10 Ann. Cas. 1055, the appeal was "from a judgment or order appointing commissioners," according to the opinion in the Van Dyke Case.

On examination we find that the Davis Case was certiorari and

quashed, because an appeal would lie "from an order of condemnation." In the Helena Case above it is stated:

"The court below rendered its judgment, finding [the facts to be found before the taking], and thereupon made its order appointing three commissioners."

From the judgment aforesaid appellant appealed. Judgment reversed and case remanded, with directions to dismiss as to two of the defendants. That appeal, then, could hardly have been made from the "order appointing commissioners," although Judge Ross, in his opinion in the Van Dyke Case, says: Appeal was from "a judgment or order appointing commissioners."

The appellate court, realizing the impropriety of appeals from interlocutory or ancillary orders, felt constrained, nevertheless, in this case to follow said previous decisions in Montana and in Van Dyke v. Midnight Sun Mining Co., supra. In the interest of legislative reform, if not of judicial interpretation, we respectfully suggest that the Montana cases cited in the Van Dyke Case were passed subsequent to adoption of our statutes, and that Congress did not, therefore, adopt the interpretation placed upon the statutes by the Montana courts. The court, in the Van Dyke Case, held that, "while there may be an appeal from an assessment made by commissioners after damages are assessed, nevertheless this right to have the findings and order of condemnation reviewed by this court is given in plain language" (in the statute). But how? The findings and order of condemnation were there coupled, for "review." The judgment or order of condemnation carried with it, on appeal, the findings supporting it and made necessary by statute "before the taking"; i. e., before condemnation.

Defendant, in its petition for the order allowing the appeal, also coupled "findings and interlocutory judgment," meaning, no doubt, the order appointing commissioners. So, also, in its petition for writ of error; but no finding was specified. If the court is "satisfied," from the evidence or otherwise, that "the public interests" require the taking, the order follows; while the findings and conclusions must be made expressly "before the taking," not necessarily so before the appointment of the commissioners. Some distinction should be made between a judgment resting upon findings, and a mere order, not so resting and not expressly made appealable by statute.

This argument is now purely academic, and not to be followed by the court on the instant case; but we cannot refrain from expressing our personal views in matters of so much importance and contention, and which are liable to recur in a jurisdiction bounded in large part by beaches containing golden sands, belonging to the government, but which the citizen may exploit.

Let formal orders be prepared consistent herewith, and let "further proceedings" be had as contemplated by the mandate and the statutes in the premises.