Max BENNY, Appellant,

v.

Charles BELL, Appellee.

No. 15081.

Court of Civil Appeals of Texas.

Dallas.

May 11, 1956.

Rehearing Denied June 8, 1956.

Irion, Cain, Bergman & Cocke, and Neil Brans, Dallas, ·for appellant.

Bonney, Wade & Stubblefield, Dallas, for appellee.

DIXON, Chief Justice.

This is a suit filed by appellant against appellee, his former business partner, seeking judgment for $2,000, the amount alleged to be due under the terms of their dissolution agreement. The trial court held that the action was prematurely brought, and dismissed the suit without prejudice to appellant's right to refile if and when a cause of action should arise under the contract.

Since June 1, 1948, the parties had been the owners of a business in Dallas, Texas, known as Bell's Chicken House. Each had made a cash capital investment of $3,250 to the enterprise. From the first, the business lost money. On October 1, 1949, the parties executed a written dissolution contract.

Under the terms of the contract appellant received a cash payment of $1,350 in part payment of his investment in the partnership. Appellee assumed control of the business, and agreed "to be responsible as sole proprietor for any further obligations, excluding those listed above; * * *." The obligations thus excluded were the debts which the business had already incurred. They amounted to $15,-593.42, and included two debts due to appellee individually, and one due to Bell Cleaning & Laundry Company, a corporation of which appellee is president.

The contract also contained these provisions:

"Further, Charles Bell hereby agrees to pay to Max Benny the remainder of his original cash investment, to wit: Two Thousand Dollars ($2,000.00) upon the happening of one of the following contingencies:

"(a) When all the above obligations have been fully paid; or,

"(b) When the books of said company show net profit of the amount of the obligations listed above; Provided However, that Charles Bell shall not be required to pay the said Two Thousand Dollars ($2,000.00) until he has made at least One Thousand Three Hundred and Fifty Dollars ($1,350.00) net profit, or an amount equal to the initial payment to Max Benny under this agreement, thereby equalizing the investment return of the parties."

The contract did not contain a provision setting a time limitation for its performance.

The controversy arises out of the different interpretations put by the parties on paragraphs (a) and (b) of the contract, and their relationship to each other and the rest of the contract. It will be observed that paragraph (a), on which appellant bases his suit, contemplates the future payment of all the old partnership debts, but it is silent as to how they are to be paid. It does not say whether they are to be paid out of the profits of the business, or whether appellee is personally liable for their payment out of income from other sources regardless of whether the business shows any profit. Paragraph (b) on the other hand expressly contemplates payment of the old debts out of profits of the business as shown by the books.

Appellant says that the word "or" between paragraphs (a) and (b) is used disjunctively, hence the two paragraphs are independent of each other. He says that paragraph (a), interpreted without reference to paragraph (b), obligates appellee himself personally to pay the obligations within a reasonable time regardless of whether the business made sufficient profits to pay them.

Appellee on the other hand says that, notwithstanding the use of the word "or" between them, paragraphs (a) and (b) cannot be interpreted independently of each other but must be construed together, the word "or" under the circumstances not having its strict disjunctive effect. It is appellee's contention that when the two paragraphs are considered in their proper relationship with each other and the whole contract, they mean that the $2,000 was to become due and payable to appellant only when the obligations had been actually paid out of the net profits of the business, or when the books showed that the business had made sufficient net profits to pay all the obligations, including $1,350 to appellee as part repayment on his initial capital investment.

The trial court agreed with appellee's interpretation. The court's conclusions of law include the following:

"Such pleadings relied upon a duty of the defendant under said contract to pay plaintiff an additional $2,000.00 out of income of the defendant not related to Bell's Chicken House or its equipment, even though neither Bell's Chicken House * * * nor its equipment earned enough money to pay the debts of the partnership and even though said debts were not all paid; such duty is not imposed by said contract upon defendant. * * * (4) That no money was due plaintiff by the defendant at the date of trial under the provisions of the October 1, 1949 contract, because: (a) All of the debts of the partnership were not paid; (b) the partnership assets had not at such date earned sufficient amount to equal the entire partnership indebtedness."

The parties entered into a written stipulation of facts. Appellee Bell operated the business alone from October 1, 1949, when the dissolution contract was signed, until May 31, 1950, at a net loss of $3,356.04. From May 31, 1950, to the date of trial he

had rented the equipment in Bell's Chicken House for $200 per month and had collected rent on said equipment amounting to $11,391.46. There had been insufficient net income from the operation of the business and rental of the equipment to pay the accrued debts. In fact there has not been sufficient net income to pay all of the debts which have actually been paid. Appellee has paid some of the debts out of his personal income from other sources. It was stipulated that appellee individually has sufficient income from other sources to pay all the old debts of the partnership.

At the time of the trial all debts had been paid except three: Rent due to Charles Bell, $300; Charles Bell, $1,000; Bell Cleaning & Laundry Co., $2,979.68. The first two of these items are debts due to appellee personally; the last item is a debt due to a corporation of which appellee is president.

Thus we are presented with a unique situation in which appellee is both a creditor and a debtor. And to further complicate the situation, his obligation to pay the $2,000 to his former partner is conditioned upon the happening of a future event: the payment of all the old partnership debts, including the debts the partnership owes to appellee himself individually.

Appellant points out that it is stipulated that appellee has sufficient income of his own from other sources to pay all the remaining obligations of the partnership business, including the debts to himself. His failure to do so within a reasonable time, says appellant, is merely a device or scheme to forestall and evade his obligation to pay the $2,000 to appellant as required by paragraph (a) of the contract. The old partnership debts are now barred by limitations, should the debtor care to invoke the statute. Hence there is no way in which appellee as a debtor could ever be required to perform his duty to pay them. Thus by his own wrongful acts appellee, according to appellant, has prevented the happening of the future event (the payment of the debts) which would mature his obligation to pay the $2,000 to appellant.

It is appellant's position that under the circumstances he is entitled to performance of the contract—that the contract so far as performance by appellee is concerned has become absolute, and appellee may now be required to pay the $2,000 to appellant. In support of this contention appellant cites us to a number of cases which hold in effect that an obligor cannot by his own wrongful acts deprive an obligee of his rights under a contract; and that an obligee becomes entitled to performance upon the happening of any wrongful actions by the obligor which prevent compliance with the terms of the contract. However under the interpretation we give to the contract in its entirety, the cases cited by appellant are not applicable.

■ It is true, as held in cases cited by appellant, that in legal documents the word "or" is ordinarily used disjunctively. But it is not always so used. Sometimes it is used otherwise. To determine the meaning and effect intended by the parties, it is necessary to consider the contract as a whole.

Our Supreme Court has quoted with approval this statement from Sutherland on Statutory Construction: "'The popular use of "or" and "and" is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context.'" Witherspoon v. Jernigan, 97 Tex. 98, 76 S.W. 445, at page 447. See also Oklahoma Nat. Life Ins. Co. v. Norton, 44 Okl. 783, 145 P. 1138, L.R.A.1915E, 695; Vinograd v. Travelers' Protective Ass'n, 217 Wis. 316, 258 N.W. 787, 106 A.L.R. 1227, 1234; Travelers' Protective Ass'n v. Jones, 75 Ind.App. 29, 127 N.E. 783; 10 Tex.Jur. 304; and 12 Am.Jur. 776.

In Travelers' Protective Ass'n v. Jones, supra, it is said: "The word 'or,' in statute, by-laws, ordinances, and wills is frequently read 'and,' and will be so read and given a conjunctive rather than a disjunctive mean-

ing, where to give it such conjunctive meaning will make the intention clear, definite, and certain, while the disjunctive use of said word would lead to doubt and uncertainty as to the true meaning of the language used. Conklin v. State [ex rel. Tilton], 8 Ind. 458; O'Connell v. Gillespie, 17 Ind. 459; Shimer v. Mann, 99 Ind. 190, 50 Am.Rep. 82. See, also, Words and Phrases, vol. 6, p. 5002 [Perm.Ed. Words and Phrases, vol. 30, p. 33] 'or.' The word 'or' is also used equivalent of 'being.' People v. [Third Nat.] Bank, 159 N.Y. 382, 54 N.E. 35. It is also used as the equivalent of 'to wit.' Downs v. Allen, C.C., 22 F. 805; Blumenthal v. Berkshire [Life Ins.] Co., 134 Mich. 216, 96 N.W. 17, 104 Am.St.Rep. 604. It is also used as the equivalent of 'that is to say,' and gives that which precedes it the same signification as that which follows it. People [ex rel.] v. Latham, 203 Ill. 9, 67 N.E. 403."

A consideration of the entire contract in this case leads us to conclude, as did the trial court, that the parties intended that the $2,000 became due and payable to appellant only after the old partnership debts were either actually paid from funds derived from the business or its assets, or *could* be paid from funds derived from the business or its assets. We are of the opinion that it was not intended by the parties that appellee should be required to dig down into his own pocket and himself pay the old debts out of his income derived from other sources.

The contract provides that in assuming control of the business appellee agrees to be responsible as sole proprietor for any further obligations "excluding the debts listed above". The debts thus excluded amounted to $15,593.42, and among them were two debts to appellee himself and the one due Bell Cleaning & Laundry Company which are still unpaid. This provision certainly does not indicate that it was the intention of the parties that appellee must himself pay the listed debts out of his income from other sources.

Further, it seems to us that the practical effect of paragraph (b) is to prevent forestalling or evading payment of the $2,000 to appellant, for under the terms of said paragraph the $2,000 becomes due and payable when the books show sufficient net profit to pay the old debts, regardless of whether appellee has actually paid them. Thus it seems to us that paragraph (b) really was intended to supplement paragraph (a) and cannot be regarded as a completely independent alternative, as appellant contends. By reason of paragraph (b) appellee cannot evade maturity of the $2,000 obligation to appellant by simply failing or refusing to pay the old debts if the books show net profits sufficient to pay them.

It is to be observed, too, that appellee may first repay himself $1,350 of his initial investment so as to equalize the amounts received by the former partners, appellant having already received his $1,350. This indicates to us that the former partners were seeking to cut down and equalize their losses. It does not indicate that either of them was individually to shoulder the whole loss regardless of whether any funds were accumulated from the business assets.

We overrule appellant's points of error Nos. 2, 3, 4, 5, 6, and 8. In the light of our holdings, appellant's points Nos. 1 and 7 are immaterial and are therefore overruled.

The judgment of the trial court is affirmed.