# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE *ex rel.* S. B. Raymond, County Collector,

*v.*

CARL R. LATHAM, Exr. *et al.*

*Opinion filed April 24, 1903—Rehearing denied June 9, 1903.*

1. SPECIAL TAXATION—*Sidewalk act of 1875 is for construction of sidewalks, only.* The Sidewalk act of 1875 is strictly a sidewalk statute, and is entirely independent of the power of municipal corporations to make local improvements by special assessment.

2. SAME—*a single ordinance can only provide for sidewalks upon one street.* A single ordinance passed under the Sidewalk act of 1875 cannot lawfully provide for the construction of sidewalks upon more than one street.

3. SAME—*a sidewalk must be entirely built before bill of costs is filed.* If the entire cost of building a sidewalk is to be apportioned to the lots abutting thereon, according to their frontage, all of the sidewalk provided for in the ordinance must be built before the bill of costs is filed. (*Craig* v. *People*, 193 Ill. 199, followed.)

4. ORDINANCES—*ordinance cannot be repealed by resolution.* A city ordinance cannot be repealed, amended or suspended by resolution.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

This is an appeal from a judgment of the county court of Cook county, sustaining objections filed by appellees, and refusing judgment of sale at the July term, 1902, of said court in the matter of the application of Samuel B. Raymond, county treasurer and *ex officio* county collector of Cook county, for judgment against delinquent lands and lots for special tax No. 04, levied and assessed by authority of the village of Wilmette for the construction of a concrete sidewalk in accordance with the provisions of an ordinance, entitled "An ordinance providing for the construction of a concrete sidewalk on North avenue, and other streets, in the village of Wilmette, Cook county, Illinois," passed by the president and board of trustees of said village July 17, 1900.

Section 1 of the ordinance provides for the construction and laying down of a concrete sidewalk in front of certain lots in certain blocks in different additions and subdivisions upon and along some twenty-five different streets in the village of Wilmette. Section 1 also provides that said sidewalk shall be five feet four inches in width, and the upper surface thereof, when completed, shall have a slope of one-quarter of an inch to the foot towards the center of the street, or avenue, on which such sidewalk is laid; that the inside line or edge of such sidewalk, when completed, shall be of a distance of thirty inches from the lot or lots, on which such sidewalk abuts, on all streets or avenues exceeding sixty-six feet in width, and at a distance of twenty inches from the lot or lots, on which such sidewalk abuts, on all streets or avenues sixty-six feet or less in width; that the top of said sidewalk nearest to the lot line shall, when completed, be six inches above the grade provided for such streets or avenues by the general ordinances of said village; that said sidewalk shall have a sand foundation six inches deep, thoroughly compacted and leveled by ramming or other process, so that the concrete work laid on same shall have a clear thickness of four inches

throughout the entire walk; that the concrete shall be spread over the sand foundation in an even layer three and one-half inches thick, etc.; that the surface or finishing layer of said concrete walk shall be one-half inch in thickness, etc.; that said sidewalk shall be laid in sections or blocks not to exceed five feet, runway length, provided that the owner of any lot or piece of ground, fronting on said sidewalk, shall be allowed thirty days, after the ordinance shall have been published, in which to construct such sidewalk alongside of his lot or piece of ground, and thereby relieve the same from the special tax therein provided to be levied thereon for the construction of the sidewalk; and that such materials and construction shall be under the supervision and subject to the approval of the superintendent of public works.

Section 2 of the ordinance provides that so much of the improvement, as shall not be made by the owners within the time aforesaid, shall be made, and the cost thereof be wholly paid for, by special taxation of the lot, lots, or parcels of land, contiguous to the proposed sidewalk, by levying the whole of the cost thereof upon such lots in proportion to their respective frontage on said proposed sidewalk.

Section 3 provides that a bill of the cost of said sidewalk, showing in separate items the cost of grading, materials, laying down and supervision, shall be filed in the office of the village clerk, certified to by the superintendent of public works, together with a list of the lots and parcels of land touching upon the line of said sidewalk, the names of the owners thereof, and the frontage as well; that the village clerk shall prepare a special tax list against such lots or parcels of land and the owners thereof, ascertaining by computation the amount of special tax to be charged against each of said lots or parcels, and the owners thereof, on account of the construction of said walk, in proportion to the frontage of each of said lots on said sidewalk, which special tax list

the clerk shall place on file in his office; that the village clerk shall thereupon issue warrants to the village collector for the collection of the amount of special tax, etc.

The objections, made by the appellees to the entry of judgment against their lands, were, in substance, as follows: That the ordinance for the cement sidewalk in question was not legally passed; that said ordinance is void; that said sidewalk was not built in the manner or at the grade provided in said ordinance; that said walk was not built by the village, but was built under a contract let by the village at so much per running foot; that said ordinance is unreasonable and oppressive, in that it required the construction of a new sidewalk in front of the property of objectors where the sidewalks already laid in front of such property were safe, durable and in good repair; that no proper bill of cost was made by said village; that the property of objectors was not benefited by the construction of such sidewalk; that the delinquent list was not filed with the county treasurer on or before April 1, 1901; that the special tax list prepared by the village clerk is not in compliance with the law; that the ordinance provides for a double improvement; that all of the sidewalk provided for in said ordinance has not been built; that the bill of cost was not made out in the manner required by law.

J. L. McKITTRICK, and GEORGE GILLETTE, for appellant.

ALDEN, LATHAM & YOUNG, PIERSON & PEASE, and GEORGE W. WILBUR, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Many objections were filed by the appellees to the entry of judgment against their lands upon the trial in the court below. It is impossible, nor is it necessary, for us to notice all of these objections. It is sufficient

to refer to two of them, which in our opinion were properly sustained by the trial court and justify its action in refusing judgment of sale against the property of the appellees.

*First*—The main objection made by the appellees, and which strikes at the validity of the ordinance, under which the improvement in question was to be constructed, is that the ordinance provided for a double improvement.

The ordinance provides for the laying of more than forty separate and disconnected sidewalks, located on some twenty-five different streets in the village of Wilmette and in diverse and widely separated parts of the village, where the physical conditions are dissimilar. It provides for the laying of somewhere in the neighborhood of seven miles of cement sidewalk in the village. A map, introduced in evidence, showing in detail where the walks were to be laid, discloses that the various pieces of sidewalk are disconnected and at long distances from each other. Some of the pieces of sidewalk, whose construction is provided for, were a mile and a half apart and some of them lay west of the tracks of the Northwestern Railroad Company, while others lay east of those tracks. Some of the sidewalks to be constructed were ordered to be laid on improved streets to re-place plank sidewalks. Some were to be laid on improved streets where no sidewalks had previously been built. Others were to be laid on unimproved streets, where there were underbrush and trees upon the line of the proposed sidewalk. On one of the streets, along which sidewalks were ordered to be laid by the ordinance, it was necessary to fill in a ditch, some six feet deep and from ten to twelve feet wide at the top, the sidewalk, under the terms of the ordinance, being required to be built where the ditch had previously existed. In some places filling was required to be done, and in others excavation was necessary. The evidence shows that there was little or no communication between residents upon certain

streets in one neighborhood where sidewalks were or-
dered to be laid, and the residents upon other streets in
another neighborhood where sidewalks were ordered to be
laid; in other words, that by the terms of the ordinance,
sidewalks were to be laid in separate neighborhoods.

It thus appears that, in this proceeding, different
streets have been combined in the same ordinance, which
are so separate and disconnected, that the laying of side-
walks on some of such streets cannot be said to in any way
benefit the property situated upon other of such streets.

The ordinance, under which the improvement here in
question was to be made, was passed in pursuance of the
Sidewalk act of April 15, 1875, entitled "An act to pro-
vide additional means for the construction of sidewalks in
cities, towns and villages." The question arises, whether
the construction of a number of sidewalks upon different
streets under the conditions above set forth can be accom-
plished under one and the same ordinance. The answer
to this question depends upon the construction of the
Sidewalk act of 1875, and the intention of the legislature
upon this subject, as disclosed by the terms of that act.

Section 1 of the act of April 15, 1875, provides as fol-
lows: "That in addition to the mode now authorized by
law, any city or incorporated town or village may by ordi-
nance provide for the construction of sidewalks therein,
or along or upon any street or part of street therein, and
may, by such ordinance, provide for the payment of the
whole or any part of the cost thereof by special taxation
of the lot, lots or parcels of land touching upon the line
where any such sidewalk is ordered, and such special
taxation may be either by a levy on any lot of the whole,
or any part of the cost of making any such sidewalk
in front of such lot or parcel of land, or by levying the
whole or any part of the cost upon each of the lots or
parcels of land touching upon the line of such sidewalk,
*pro rata,* upon each of said lots or parcels, according to
their respective values—the values to be determined by

the last preceding assessment thereof for the purpose of
State and county taxation; or the whole or any part of
the cost thereof may be levied upon such lots or parcels
of land in proportion to their frontage upon such side-
walks, or in proportion to their superficial area, as may
be provided by the ordinance ordering the laying down
of such sidewalk; and in case such ordinance shall only
require the payment of a part of the cost of such side-
walk to be paid by a special tax as aforesaid, then the
residue of such cost shall be paid out of any fund of such
city, town or village raised by general taxation upon
the property thereof, and not otherwise appropriated."
(1 Starr & Curt. Ann. Stat.—2d ed.—p. 857). The ordi-
nance in the case at bar provides that the cost of the
improvement shall be wholly paid for by special taxation
on the lot, lots, or parcels of land contiguous to the pro-
posed sidewalk by levying the whole of the cost thereof
upon such lot, lots or parcels of land in proportion to
their respective frontages on such proposed sidewalk.

"The act of 1875 provides an entirely different method
of levying the special tax from that provided in article 9
of the City and Village act. There is no similarity be-
tween the methods pursued." (*People* v. *Yancey*, 167 Ill.
255). "The act of 1875 is strictly a sidewalk statute and
is independent of and distinct from the power conferred
upon towns, cities and villages under article 9 of the
City and Village act, to make local improvements by
special assessments. * * * It does not pretend to au-
thorize the improvement of streets in any other way than
by the construction of sidewalks." (*People* v. *Field*, 197
Ill. 568). The question has never before been squarely
presented to this court, whether the same ordinance can
legally provide for the construction of sidewalks upon a
number of different streets, rather than upon one street
alone, under the act of 1875.

It is true that a single ordinance, providing for pav-
ing one or more streets, or providing for a system or com-

mon scheme for laying sewers, service pipes or drains
has been held by this court to be a valid and legal ordi-
nance. Where, in such case, many streets and parts of
streets have been embraced in the scheme of improve-
ment adopted by the city, they have been all regarded
as parts of the same improvement. But the cases, where
this rule has been announced, and where such double
improvements made by a single ordinance have been en-
dorsed and approved, have arisen under other provisions
of the law than the Sidewalk act of 1875. Thus, in *City
of Springfield* v. *Green*, 120 Ill. 269, it was held that an or-
dinance for the paving of several streets and alleys and
parts of streets with the same materials, and in the same
way, was not obnoxious to the objection that it embraced
more than one improvement. The principle announced
in *City of Springfield* v. *Green, supra*, was applied to a sys-
tem of sewerage in *Drexel* v. *Town of Lake*, 127 Ill. 54, and
*Village of Hinsdale* v. *Shannon*, 182 id. 312, and *Haley* v. *City
of Alton*, 152 id. 113; and to a system of drains and sewers,
as in *Walker* v. *People*, 170 Ill. 410; and to sewer and water
service pipes, as in *Palmer* v. *City of Danville*, 154 Ill. 156;
and to a main sewer with lateral branches, as in *Payne* v.
*Village of South Springfield*, 161 Ill. 285. In all such cases,
a special benefit is supposed to be conferred upon the
property taxed, and in theory, at least, there is supposed
to be a common benefit flowing from the improvement as
a whole. "In all such cases, the limits of the improve-
ment are within the discretion of the city council, to be
fixed by ordinance, subject only to the requirement that
the improvement shall be so far single, that, presump-
tively at least, some benefit will flow from the improve-
ment to the property that is to be subjected to taxation.
When the limits of the improvement are fixed by the or-
dinance, the contiguous property is created by law into
a taxing district, and when the tax is to be imposed ac-
cording to frontage, presumptively each lot, or parcel of
land, is benefited by the proposed improvement, and its

cost, or such part thereof as is required to be raised by
the special tax, is to be apportioned upon such contigu-
ous lots, blocks and parcels of land, in the proportion
that the front of each bears to the entire frontage in-
cluded within the taxing district, and made subject to
the tax.   *   *   *   The extent of the improvement, and
what shall be included within it, and its nature and char-
acter, are within the legislative discretion of the city
council.   Sidewalks on each side of the street may be
included as a single improvement, as in *Watson* v. *City
of Chicago*, 115 Ill. 78; and the improvement of different
streets may be included in a single scheme of improve-
ment, as in *City of Springfield* v. *Green*, 120 Ill. 269, and
*Wilbur* v. *City of Springfield*, 123 id. 395.   (Burroughs on
Taxation, sec. 146; Cooley on Taxation, 450, 451).   The
limits of the district rest in the discretion of the legisla-
tive power, and the courts will interfere only to correct
a clear abuse of the discretion.   In theory, (and the prac-
tice should in all cases of imposing special taxes con-
form to the theory), the limits of the improvement should
be so fixed, as that the property to be taxed shall re-
ceive some benefit from the proposed improvement.   Ab-
solute equality, as already said, is not attainable.   But
if, in the combination of streets, and the like, they should
be so separate and distinct that the making of one could
not reasonably be said to benefit property situated upon
the other, their combination would be clearly violative
of the rule governing in such cases.—Cooley on Taxa-
tion, 447-449." (*Davis* v. *City of Litchfield*, 145 Ill. 313).   The
principle, lying at the bottom of all these cases, is that
the combination of streets must not be so separate and
distinct, as that the improvement of one cannot reason-
ably be said to benefit the property situated upon the
other.   In the case at bar, it cannot be said that the
laying of a sidewalk on a street in a distant part of the
village of Wilmette can be of any essential benefit to a
street or sidewalk in another and entirely different sec-

tion of the village, and where the two neighborhoods are separated not only by long distances, but by the tracks of a railroad company.

In *Watson* v. *City of Chicago*, 115 Ill. 78, an ordinance for the construction of a sidewalk on both sides of the same street was held not to be invalid, as embracing two separate and distinct local improvements, upon the ground that the construction of the sidewalk on one side of the street was of more or less benefit to the property on both sides of the street. In that case, however, the sidewalk was constructed under the general provisions of the City and Village act, as embraced in article 9 thereof, and not under the Sidewalk act of 1875. While the case of *Watson* v. *City of Chicago*, *supra*, held that the construction of a sidewalk on both sides of one street was not a double improvement, it by no means held that the construction of a sidewalk under the same ordinance upon two different streets was not a double improvement, even under the general provisions of article 9 of the City and Village act. That case does not oppose or conflict with such a construction of the Sidewalk act of 1875, as limits the construction of a sidewalk under the latter act to one street.

These words in the act of 1875, to-wit, "any city or incorporated town or village may by ordinance provide for the construction of sidewalks therein, or along or upon any street or part of street therein," cannot, upon any correct principle of statutory construction, be held to mean that a city or incorporated town or village may, by a single ordinance, provide for the construction of sidewalks upon any number of streets. The word "or," first used in the clause thus quoted, does not have the meaning of "and," as seems to be claimed by counsel for appellant. On the contrary, it has the meaning of "that is to say," or "to-wit." Anderson in his Dictionary of Law, (p. 737) says: "'Or' may be used in the sense of 'to-wit' explaining what precedes." The word "or" in a statute is

often used in the sense of "to-wit," that is, in explanation
of what precedes, and gives to that which precedes the
same signification as that which follows it. (2 Bouvier's
Law Dict. p. 262, and cases cited; see also *Commonwealth*
v. *Grey and wife*, 2 Gray, 502; *Brown* v. *Commonwealth*, 8
Mass. 59). If these rules of construction be applied to
the clause in question, it will read as follows: "Any city
or incorporated town or village may by ordinance pro-
vide for the construction of sidewalks therein, that is to
say, along or upon any street or part of street therein."
The statement, that the city or incorporated town or vil-
lage may by ordinance provide for the construction of
sidewalks therein, was intended to confer the power to
provide for the construction of sidewalks along or upon
any street or part of street therein. Cities and villages
would hardly undertake to lay sidewalks except along
or upon some street or part thereof. They could not lay
them upon private property, nor could a special tax be
levied for constructing them in a public park. It nec-
essarily follows that the clause, which provides for the
construction of sidewalks in the city or village, means
the same as a provision for the construction of sidewalks
along or upon any street or part of street in the city or
village.

We are not without authority for the construction
thus given to the Sidewalk act, nor is this construction
any the less correct because of the use of the word, "side-
walks," instead of the word, "sidewalk," in the first clause
of section 1 of the act of 1875. The provision is not, that
the city or village may by *an* ordinance provide for the
construction of sidewalks, but that it may *by ordinance*,
that is to say, by the method of ordinance, provide for
the construction of sidewalks, not necessarily meaning
that a number of sidewalks may be provided for in one
and the same ordinance. In *Arnold* v. *Cambridge*, 106 Mass.
353, a statute of the State of Massachusetts provided
that "whenever the mayor and aldermen of the city of

Cambridge shall deem it expedient to construct side-
walks or complete any partially constructed sidewalks
in any street of said city, they are hereby authorized to
construct or complete such sidewalks with edge stones,
and in front of buildings or occupied premises to cover
the same with brick or flat stones," etc.    It will be ob-
served that the Massachusetts statute uses the words,
"to construct sidewalks," and also uses the words "in any
street of said city," and, in the use of these words, is pre-
cisely like the Illinois Sidewalk act of 1875.    In the case
of *Arnold* v. *Cambridge, supra,* the Supreme Court of Mas-
sachusetts, giving construction to their statute as thus
quoted, said: "The vote, under which the proceedings in
this case have been had, provides for a sidewalk from
Harvard Square to the end of the bridge connecting Cam-
bridge and Boston.    It is treated in all the preliminary
proceedings, and in the final assessment, as a continuous
and single sidewalk, but it is really a sidewalk part of
which is in Harvard and part in Main street.    We do not
undertake to decide what weight we should attach to
any objection on this account, if it were merely the case
of one single street called by different names in different
portions of its course or length.    But Harvard street and
Main street are two entirely distinct and separate high-
ways, which, although they unite at one point, yet form
two lines of travel nearly parallel to each other for about
two miles.    We do not think that the statute was intended
to give the mayor and aldermen the power to include
sidewalks in two different streets in one single assess-
ment.    If two streets may be so assessed, it is difficult
to see why three or more may not be included in one sin-
gle assessment, or why all the sidewalks in the city may
not be included in one comprehensive assessment.    It
was evidently intended by the legislature that the case
of each street should be considered separately, and with
a view to its own special circumstances.    Each estate is
liable to assessment, not necessarily for the expense of

the edge stones and covering materials laid down on that portion of the sidewalk upon which it adjoins or fronts, but according to a just proportion of the collective amount of all that kind of expense incurred on the same side of the same street. We cannot know that this proportion might not be very different, if other streets were to be included in the same assessment. It may be that practically there would be no danger of any injustice or inequality in the assessment; but the legislature have only given to the board of aldermen a limited authority over the subject matter. The power to treat two sidewalks in two distinct streets as one, for the purposes of assessment, is not given by the statute." The case of *Arnold* v. *Cambridge, supra*, was endorsed and approved of in the subsequent case of *Wilbur* v. *Taunton*, 123 Mass. 522.

The language, used in the quotation from *Arnold* v. *Cambridge, supra*, is precisely applicable to the case at bar. The act of 1875 was not intended to give the power to the common council to include sidewalks in two different streets in one single assessment. If this were so, then provision could be made for the laying of sidewalks in all the streets of a city under one ordinance, even though the different walks are entirely disconnected and do not form parts of the same system. It would hardly be contended that sidewalks could be laid on a street at the extreme north side of the city of Chicago and in another street at the extreme south side of the city of Chicago under one and the same ordinance, and the total cost be apportioned according to the entire frontage. If sidewalks can be laid on more than one street under the same ordinance where the walks are wholly disconnected, it is difficult to see where the limit as to the number of streets to be provided for in one ordinance can be drawn.

The construction, thus given to section 1 of the Sidewalk act of 1875, receives support from the language used in section 2 of that act. Section 2 provides as follows: "Said ordinance shall define the location of such

proposed sidewalk with reasonable certainty, shall pre-scribe its width, the materials of which it shall be con-structed, and the manner of its construction," etc.    This language certainly refers to one sidewalk, and not to several sidewalks, and has reference to the location and width of one sidewalk and to the materials of which one sidewalk shall be constructed.

*Second*—The evidence upon the trial below showed that the sidewalks, provided for by the ordinance, were not completed when the bill of cost was filed, nor at the time of the application for judgment.    The objection is made by the appellees that, where the entire cost of building a sidewalk is provided by ordinance to be ap-portioned to the lots abutting thereon according to their frontage, all the sidewalk provided for in the ordinance must be constructed before the bill of cost can be made out.    Such was the holding of this court in *Craig* v. *People*, 193 Ill. 199, where it was said:    "The evidence was that the sidewalk was not completed when the bill of cost was filed, nor at the time of the application for judgment. As the entire cost of the whole walk was to be appor-tioned to the lots according to their frontage, it could not have been ascertained at that time.    No certified bill of the cost of the sidewalk could be made before it was completed, when the city engineer attempted to file such bill with the city clerk."

In the case at bar, the proof showed that the total number of feet of walk to be laid under the ordinance was 36,750; that of these 12,150 feet had been laid by the property owners themselves; and that 22,200 feet were included in the public contract let for the construc-tion of the work, which was not done by the owners themselves.    It is conceded that of the 22,200 feet, for the construction of which a public contract was let, 2400 feet have not yet been laid.

Appellant insists that about 400 feet of the 2400 feet not yet completed was abandoned by the village, but no

evidence of such abandonment appears in the record, so far as we have been able to discover. The ordinance, providing for the making of the improvement, was passed on July 17, 1900; and it is said that, subsequently, on August 21, 1900, a resolution was passed, providing that a contract should not be let for the remaining 2000 feet which had not been laid, and that this resolution operated as a repeal of the ordinance as to the sidewalks specified in the resolution. But it is well settled that an ordinance cannot be repealed or amended or suspended by a resolution. (*Hibbard & Co.* v. *City of Chicago*, 173 Ill. 91; *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago*, 174 id. 439; *People* v. *Mount*, 186 id. 560).

It being true, then, that all the sidewalks provided for in the ordinance were not completed when the bill of cost was filed, nor at the time of the application for judgment, it follows that the doctrine of *Craig* v. *People*, *supra*, is applicable to the case at bar. All the walk, provided for in the ordinance, must be constructed in order to ascertain the proportion to be levied against any particular lot. Where property owners are required to pay a proportion of the entire cost of an improvement rather than the actual cost of the construction of the same in front of their own property, the theory is that the entire improvement, and not merely that part of it which is in front of each particular lot, is a benefit to such lot; and it, therefore, follows that, if a portion of the improvement is not completed, each property owner has failed to get a portion of the benefit to be derived from the improvement, whether the same is completed in front of his particular lot, or not. The objection, therefore, based upon the fact, that all the sidewalks provided for in the ordinance had not been laid, was properly sustained by the court below.

For the reasons above set forth, the judgment of the county court is affirmed.               *Judgment affirmed.*